UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

<u>Gerald J. Silva</u>

    v.                                             Case No. 21-cv-048-SJM-AKJ

<u>Magistrate John F. McBurney et al.</u>[1]

**REPORT AND RECOMMENDATION**

Gerald J. Silva, representing himself, filed a complaint in this Court while he was incarcerated at the Adult Correctional Institution in Cranston, Rhode Island ("ACI"). Mr. Silva's complaint (Doc. No. 1) and complaint addenda (Doc. Nos. 9, 10) are before the court for preliminary review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(a). Also before the Court for a recommendation as to disposition is the "Plaintiff's Motion for Summary Judgment in Favor of Plaintiff" (Doc. No. 16).[2]

---

[1] Plaintiff Gerald J. Silva names the following defendants in his complaint: United States District Court for the District of Rhode Island Judge John J. McConnell Jr., Rhode Island Supreme Court ("RISC") Associate Justice Luis Matos, RISC Associate Justice Maureen Keough, RISC Magistrate John F. McBurney III, former RISC Magistrate Richard Raspallo, former United States Attorney General William Barr, former United States Attorney for the District of Rhode Island Aaron L. Weisman, Rhode Island Attorney General ("RIAG") Peter Neronho, former Assistant RIAG Ronald Gendron, and unnamed Assistant RIAGs.

[2] In addition to recommending a disposition on Mr. Silva's motion for summary judgment, the undersigned Magistrate Judge considers the factual assertions therein as complaint addenda for purposes of preliminary review.

**Preliminary Review Standard**

The court may sua sponte dismiss claims asserted in a prisoner's complaint if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious.  See 28 U.S.C. §§ 1915(e)(2), 1915A(b).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  In conducting preliminary review, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether the plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**Background**[3]

I.   Federal Criminal Case and Supervised Release Violation

In 2014, a federal jury convicted Mr. Silva of six counts of receiving child pornography and one count of possessing child

---

[3] The Court's summary of relevant background facts is drawn from Mr. Silva's complaint (Doc. No. 1) and complaint addenda (Doc. Nos. 9, 10, 16).  Additionally, the Court takes judicial notice of Mr. Silva's federal criminal case, United States v. Silva, No. 13-cr-043-JJM-PAS (D.R.I.), and Rhode Island state criminal case, State v. Silva, No. P2-2019-3668A (R.I. Super. Ct.).  See Fed. R. Evid. 201.

pornography.[4]  See United States v. Silva, 794 F.3d 173, 177 (1st Cir. 2015).  In that case, the Court sentenced Mr. Silva to serve seventy-two months in prison, followed by fifteen years of supervised release with conditions.  See id.

Mr. Silva was released from the incarcerative portion of his federal sentence on May 3, 2019.  Mr. Silva then "deliberately waited until May 7, 2019, which was beyond the mandated report time-limit to report to any Federal Probation Office, in order to continue [his] defiant challenge to the organized crime syndicate in R.I. State and Federal governments."  Compl. (Doc. No. 1, at 10).

As a result of his failure to report to the United States Probation Office, a warrant issued for Mr. Silva's arrest, and United States Marshals arrested him pursuant to that warrant the following day.[5]  See id. at 10-11.  After conducting a hearing, a federal Magistrate Judge issued a Report and Recommendation

---

[4] Mr. Silva maintains that the federal criminal prosecution underlying some of the claims asserted here was retaliation for his efforts to uncover an allegedly corrupt conspiracy operating inside the Rhode Island legislature and judicial system.  See Compl. (Doc. No. 1, at 2-9).  These allegations provide context for the claims Mr. Silva has asserted in this case but are not the subject of any claims asserted in the complaint, and therefore are not recounted in detail.

[5] Mr. Silva asserts that during his arrest, the United States Marshals seized his money (totaling $110.10) and other belongings in retaliation for his refusal to answer their questions.  Mr. Silva's claims arising from this arrest and the resulting seizure of his property are the subject of another civil suit Mr. Silva filed in this Court, Silva v. Smith, No. 20-cv-012-PB (D.R.I.).

3

("R&R") recommending, among other things, that the presiding District Judge impose a four-month sentence, or time-served, for Mr. Silva's violation of the terms of his supervised release. On September 16, 2019, United States District Judge John J. McConnell conducted a final hearing, accepted the R&R, imposed a sentence of time served, and, as discussed in more detail below, remanded Mr. Silva to Rhode Island state authorities pursuant to a warrant issued by the Rhode Island Superior Court ("RISC"). See id. at 12; see also Sept. 16, 2019 Supervised Release Violation Hr'g Tr., United States v. Silva, No. 13-cr-043-JJM-PAS (D.R.I.) (ECF No. 144, at 24-30).

II.  Rhode Island State Court Criminal Case

Mr. Silva was charged in the RISC with failing to register as a sex offender.  See State v. Silva, No. P2-2019-3668A (R.I. Super. Ct.).  While Mr. Silva was still in federal custody for violating his supervised release conditions, RISC Magistrate John F. McBurney III issued a notice for a pre-arraignment hearing for Mr. Silva, which was sent to the home of one of Mr. Silva's relatives.  See Compl. (Doc. No. 1, at 11).  The following day, Mr. Silva wrote to Magistrate McBurney, disavowing any obligation to any Rhode Island state court because he had not, in his view, "resided" in Rhode Island since 2014, when he was first incarcerated on his federal charges.

Id. at 11.  Mr. Silva also asserted that he "had deliberately refused to establish a residence in any state," and that he was (then) "federally incarcerated . . . for violating [his] federal conditions of probation, including refusing to establish a residence in R.I."  Id.  Mr. Silva, due to his federal incarceration, did not appear at the RISC pre-arraignment conference, and Magistrate McBurney issued a warrant for his arrest.  See id.

When Mr. Silva was released from federal custody on September 16, 2019, federal authorities turned him over to Rhode Island state authorities, and he was then incarcerated at the ACI.  See id. at 12.  The following day he was arraigned in the RISC on the state criminal charge alleging he had violated the state sexual offender registration law.

On October 26, 2019, Mr. Silva wrote a letter to RISC Associate Justice Luis Matos, the presiding judge in his state court criminal case, accusing (then) Rhode Island Attorney General ("RIAG") Peter Neronha, and his assistants, of prosecuting Mr. Silva without legal authority.[6]  Id. at 13.  Mr. Silva also asserted in that letter that the state prosecutors

---

[6] Here, Mr. Silva has stated that was not, at the time he was charged in state court, a Rhode Island resident, and therefore, the RIAG had no authority to prosecute him for violating the Rhode Island sexual offender registration law, which applies only to Rhode Island residents.

5

and Magistrate McBurney were violating his Fifth Amendment protection against double jeopardy.  See id.  Mr. Silva states that Associate Justice Matos did not respond and refused to hold an evidentiary hearing on the "false charges" the RIAG was pursuing against Mr. Silva, in violation of his Sixth Amendment right to a speedy trial.  Id. at 13-14.

Several weeks later, on November 18, 2019, Mr. Silva wrote to (then) United States Attorney General ("USAG") William Barr arguing that the above-described events constituted constitutional violations and crimes.  Id. at 14.  Mr. Silva contends that USAG Barr "failed in his sworn duties to uphold the [U.S. Constitution]" because he did not respond.  Id.

On December 18, 2019, Mr. Silva "notified" former RISC Magistrate Richard Raspallo[7] "about the State's lack of jurisdiction."  Id. at 15.  Mr. Silva asserts, without further explanation, that Magistrate Raspallo "refused to uphold his sworn duty to protect the Constitutional Laws of the U.S. and to protect [Mr. Silva.]"  Id.

Approximately fourteen months later, on February 8, 2021, Mr. Silva appeared before RISC Associate Justice Maureen Keough for a hearing in his state criminal case.  Mr. Silva claims that Associate Justice Keough refused to discuss: the State's failure

---

[7] Former RISC Magistrate Raspallo is now an RISC Associate Justice.

6

to arraign or indict him on state charges since his arrest and incarceration on September 16, 2019, in violation of his Sixth Amendment right to a speedy trial; his Fifth Amendment right to be protected from double jeopardy because he had already been adjudicated for failure to register as a sex offender when he was found to have violated the conditions of his federal supervised release; that Mr. Silva did not reside in Rhode Island; and that the RISC had not responded to his motions to dismiss and to change venue.  Mr. Silva states Associate Justice Keough's refusal to discuss those matters was disrespectful to Mr. Silva as a self-represented litigant.  Mr. Silva also asserts here that Associate Justice Keough "acted on behalf of the State Assistant Attorney general, thereby performing the function of a de facto prosecutor."  Compl. Addendum (Doc. No. 9, at 2-3).  Mr. Silva further claims that neither his own attorney nor the prosecutor fulfilled their respective duties to protect his constitutional rights in his state criminal case.

   Mr. Silva states that on May 25, 2023, he appeared in the RISC, where the Court "dismissed" the state charges against him "as being unfounded and without merit."  Pl.'s Mot. for Summ. J. (Doc. No. 16, at 1).  Mr. Silva claims that the dismissal of his state criminal case "validates" his complaint here.  Id. at 2.

III. Prison Conditions

    A.    Medical Care

Mr. Silva asserts that on September 16, 2019, the date he was released from federal custody, taken into state custody, and placed at the ACI, the ACI medical staff failed to provide him with "life sustaining high blood pressure medication resulting in a serious medical incident occurring during the night of 9/21-22/19." Compl. (Doc. No. 1, at 15). Mr. Silva alleges that the responsible ACI medical staff members violated his federal constitutional rights, and were negligent, in failing to provide him with his blood pressure medication. Mr. Silva also complains generally of a "continuing lack of proper medical treatment" during his incarceration at the ACI.

    B.    Access to the Courts

In his complaint, Mr. Silva alleges that, at the ACI, he "had absolutely no direct access to the law library or any access to the copier since at least March 13, 2020," until at least January 2021, which, he contends, "clearly violates" his constitutional right to access the courts. Id. (emphasis in original).[8] Mr. Silva asserts that his "ability to access

---

[8] The court takes judicial notice that March 13, 2020 coincides with the onset of the COVID-19 pandemic in the United States.

8

[ACI]'s law library and copy legal documents" was "significantly hampered" during his incarceration at that facility, in violation of his federal constitutional right to access the Courts. He also states that he experienced "interference and damage to [his] ability to effectively access and navigate the various judicial systems." Compl. Addendum (Doc. No. 10, at 2).

IV.  Claims Asserted

In his complaint, Mr. Silva alleges that the named defendants' actions are civilly and/or criminally prosecutable under the United States Constitution's Supremacy Clause, the Fifth, Sixth, and Fourteenth Amendments, 42 U.S.C. § 1983 (civil action for deprivation of rights), 42 U.S.C. §§ 1985-86 (civil action for conspiracy to interfere with civil rights), 18 U.S.C. § 241-42 (criminal analogs of 42 U.S.C. §§ 1985-86), 18 U.S.C. § 1962(a), (criminal Racketeer Influence Corrupt Organizations Act ("RICO") statute), and as a "Criminal Action for Conspiracy against Rights of Citizens." Compl. (Doc. No. 1, at 1, 17). As relief, Mr. Silva asks this court "to take corrective actions to protect society from any further harm by the defendants, and to prosecute the defendants to the fullest extent of the laws." Id. at 18.

9

## **Discussion**

I.  <u>Claims Based on Criminal Statutes</u>

As an initial matter, Mr. Silva's complaint seeks to assert criminal charges against the defendants for purported "conspiratorial violations" of his constitutional rights. Compl. (Doc. No. 1, at 1, 18) (citing, for example, 18 U.S.C. §§ 241, 242, and RICO). A private citizen, however, may not initiate a criminal prosecution. See United States v. Texas, 599 U.S. 670, 677 (2023 (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). And "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983)." Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) (citations omitted) (noting that neither § 241 nor § 242 gives rise to a civil action for damages). Since Mr. Silva cannot bring criminal charges, the District Judge should dismiss all of the claims Mr. Silva asserts which allege any defendant's civil liability for criminal conduct, or which seek to bring criminal charges against the defendants.

II. Judicial Immunity

> It is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions. Judicial immunity is appropriate unless a judge is carrying out an activity that is not adjudicatory. To determine if the judge is entitled to the full protection of the doctrine's deflector shield, the Supreme Court has assessed whether the judge's act was one normally performed by a judge, and whether the parties were dealing with the judge in his or her judicial capacity. Further, absolute judicial immunity means not just immunity from damages, but immunity from suit altogether.

Strahan v. McCafferty, No. 23-cv-297-JJM-LDA, 2023 U.S. Dist. LEXIS 145806, at *11-*12, 2023 WL 5929070, at *4 (D.N.H. Aug. 4, 2023) (citations and internal punctuation omitted), appeal filed, No. 23-1734 (1st Cir. Sept. 7, 2023).

Here, Magistrate McBurney's, Associate Justice Matos's, then-Magistrate Raspallo's, Associate Justice Keough's, and Judge McConnell's alleged conduct were all judicial acts, as they were acts normally performed only by judges in proceedings in which the judges were acting in their judicial capacities. The District Judge, therefore, should dismiss all the claims Mr. Silva has asserted against Magistrate McBurney, Associate Justice Matos, then-Magistrate Raspallo, Associate Judge Keough, and Judge McConnell, and should dismiss those defendants from this action.

III. <u>Prosecutorial Immunity</u>

Prosecutors are absolutely immune from suit for "exercising the core prosecutorial functions of 'initiating a prosecution and . . . presenting the State's case.'" Penate v. Kaczmarek, 928 F.3d 128, 136 (1st Cir. 2019) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976)); see also Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Here, Mr. Silva seeks to assert claims against RIAG Neronha and his assistants for charging and prosecuting him for an alleged violation of Rhode Island state criminal law.  As criminal charging decisions and the prosecution of criminal cases are "core prosecutorial functions," Penate, 928 F.3d at 136, RIAG Neronha and his assistants are entitled to absolute immunity.  Accordingly, the District Judge should dismiss the claims Mr. Silva has asserted against them.

IV.  <u>Defendants Barr, Gendron, and Weisman</u>

Mr. Silva's complaint does not include any allegations showing that former USAG Barr, former United States Attorney Weisman, or former Assistant RIAG Gendron, engaged in any conduct that violated Mr. Silva's constitutional or statutory rights.  The complaint alleges no factual content pertaining to former United States Attorney Weisman or former Assistant RIAG Gendron, and Mr. Silva only alleges, in a conclusory manner,

12

that former USAG Barr's failure to respond to Mr. Silva's November 18, 2019 letter violated Mr. Silva's constitutional rights. Mr. Silva has no general constitutional right, however, to receive a response to a letter to the USAG concerning his criminal case. Accordingly, the District Judge should dismiss the claims Mr. Silva has asserted against former USAG Barr, former United States Attorney Weisman, and former Assistant RIAG Gendron, for failing to state a claim upon which relief might be granted.

V.   Prison Conditions

    A.   Medical Care

Mr. Silva alleges that the ACI medical staff failed to provide him with constitutionally adequate medical care, in violation of his Eighth Amendment rights. Because he was a pretrial detainee at the time the events underlying these claims occurred, Mr. Silva's claims concerning his medical care at the ACI arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment, which applies only to claims asserted by sentenced prisoners. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

"'[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'" Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015)

13

(emphasis in original) (citation omitted).  Beyond that, the government's duty to protect the health and safety of persons who are involuntarily detained "'extend[s] at least as far as the protection that the Eighth Amendment gives to a convicted prisoner.'"  Gomes v. U.S. Dep't of Homeland Sec., 460 F. Supp. 3d 132, 145 (D.N.H. 2020) (quoting Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016)).

> A prison official violates the Eighth Amendment if (1) the alleged deprivation of medical care is objectively "sufficiently serious"; and 2) the prison official has a "sufficiently culpable state of mind" that shows "deliberate indifference to inmate health or safety."  . . .  The objective component may be established by allegations regarding an unmet serious medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  . . ..  With respect to the subjective component of the Eighth Amendment standard, a defendant is deliberately indifferent if he subjectively "knows of and disregards an excessive risk to inmate health or safety."  To show the defendant had a culpable state of mind, the plaintiff "must provide evidence that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm."  "Deliberate indifference entails something more than mere negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

Gomes, 460 F. Supp. 3d at 146 (citations omitted).

In Kingsley, the Supreme Court found that a pretrial detainee's excessive force claim should be evaluated under an

14

objective standard.  576 U.S. at 397.  At this stage of this case, in the absence of any argument from the parties on the question, this Court declines to express an opinion as to whether Kingsley has altered the law such that a pretrial detainee who has been involuntarily detained no longer needs to show subjective deliberate indifference in order to state a Fourteenth Amendment due process claim for inadequate medical care, but need only demonstrate that the defendants' actions were objectively unreasonable.  See generally Gomes, 460 F. Supp. 3d at 147-48 (discussing potential impact of Kingsley on conditions-of-confinement claims of civil detainees).

At the preliminary review stage, the Court can reasonably infer, from Mr. Silva's statement that his blood pressure medication was "life-sustaining," that his high blood pressure constituted a serious issue in need of medical attention. However, Mr. Silva has not at this time identified anyone at the ACI who was responsible for denying him adequate medical care for that condition.  Further, while Mr. Silva has also claimed that, in addition to not receiving his blood pressure medication, he was subjected to a general lack of medical care at the ACI, he has not stated facts concerning any specific medical need he had for which he was denied adequate care or treatment, or any defendant responsible for denying him adequate medical care and treatment.

15

Accordingly, in an Order issued simultaneously with this R&R, the Court will provide Mr. Silva with the opportunity to amend his complaint to identify the individual or individuals who, he alleges, violated his Eighth Amendment rights by denying him necessary medication for his high blood pressure. Mr. Silva may also assert, in his amended complaint, other instances in which he alleges he was denied constitutionally adequate care. In his amendment, Mr. Silva should identify each person he seeks to sue with regard to his medical care claim(s), and should state, with specificity, what each of those individuals did or failed to do to violate his due process rights. Mr. Silva must, in his amended complaint, assert facts which demonstrate that each defendant's actions amounted to more than mere negligence.[9]

B.  Access to the Courts

The First Amendment protects a prisoner's right "to petition the Government for a redress of grievances," U.S. Const. amend. I, and "[t]he right of access to the courts is an

---

[9] In addition to his constitutional claims, Mr. Silva has asserted generally that the unnamed ACI medical staff members who denied him adequate medical care are liable to him for negligence under state law. Accordingly, to the extent Mr. Silva asserts facts in his amended complaint which demonstrate one or more negligence claims, but which fall short of stating constitutional claims, the Court will determine, after the amended complaint is filed, whether to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367.

established aspect of this right." Fabiano v Hopkins, 352 F.3d 447, 453 (1st Cir. 2003) (citation omitted); see also Bounds v. Smith, 430 U.S. 817, 821 (1977) (It is well "established . . . that prisoners have a constitutional right of access to the courts."). In addition, denial of access to the courts for a self-represented litigant may implicate the Sixth and Fourteenth Amendments. See Lewis v. Casey, 518 U.S. 343, 346 (1996).

However, "[t]he right of access to the courts, in the context of prisoners, is addressed only to a prisoner's right to attack his conviction and his right to challenge the conditions of his confinement." Riva v. Brasseur, No. 15-2554, 2016 WL 9650983, at *1, 2016 U.S. App. LEXIS 23932, at *3 (1st Cir. Sept. 12, 2016); see also Lewis, 518 U.S. at 355. Further, a prisoner must show actual injury, which occurs when an inmate's "nonfrivolous legal claim [has] been frustrated or [] impeded." Lewis, 518 U.S. at 353.

Here, Mr. Silva alleges that he was denied access to the law library and could not make copies during his pretrial detention at the ACI, which interfered with his ability to navigate "various judicial systems." Mr. Silva has not identified any harm he suffered to any specific court action he was constitutionally entitled to pursue. Nor has he identified any defendant responsible for denying him access to the library and copies. Accordingly, the Court, in an Order issued this

17

date, affords Mr. Silva the opportunity to file an amended complaint identifying the defendant(s) to this claim and stating, with specificity, what each defendant did to deny him access to the courts. Further, Mr. Silva must assert facts to demonstrate that he suffered actual injury in a legal matter he was entitled to pursue, as a result of the actions of the defendant(s).

## Conclusion

For the foregoing reasons, the district judge should:

- dismiss all of the claims seeking criminal prosecution or based on the criminal conduct of any defendant;

- dismiss all of the claims asserted against the defendant judges;

- dismiss all of the claims asserted against: former USAG Barr, former United States Attorney Aaron Weisman, RIAG Neronha, former Assistant RIAG Gendron, and the unnamed Assistant RIAGs Mr. Silva intended to sue here;

- dismiss all of the currently named defendants, and the unnamed defendant Assistant RIAGs from this case as party defendants; and

- deny Mr. Silva's motion for summary judgment (Doc. No. 16).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified

time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                Andrea K. Johnstone
                                                United States Magistrate Judge

December 28, 2023

cc: Gerald J. Silva, pro se